**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| TOTAL COMM SYSTEMS, INC., | Case No. 18-10525 (ELF) |
| Debtor. | |

**FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
TOTAL COMM SYSTEMS, INC., THE DEBTOR AND DEBTOR-IN-POSSESSION**

**BIELLI & KLAUDER, LLC**

Thomas D. Bielli, Esquire
David M. Klauder, Esquire
Cory P. Stephenson, Esquire
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Phone: 215-642-8271
Fax: 215-754-4177
tbielli@bk-legal.com
dklauder@bk-legal.com
cstephenson@bk-legal.com

*Counsel to the Debtor*

## TABLE OF CONTENTS

Page

**ARTICLE I Introduction**.................................................................................... 4
**ARTICLE II Definitions** ................................................................................... 4
**ARTICLE III Classification of Claims** .......................................................... 9
    3.1.    **Class 1.** ............................................................................. 9
    3.2.    **Class 2.** ............................................................................. 9
    3.3.    **Class 3.** ............................................................................. 9
    3.4.    **Class 4.** ............................................................................. 9
    3.5.    **Class 5.** ............................................................................. 9
    3.6.    **Class 6.** ............................................................................. 9
    3.7.    **Class 7.** ............................................................................. 9
    3.8.    Administrative and Unsecured Priority Tax Claims........................... 9
    3.9.    Priority Non-Tax Claims. ................................................... 10
    3.10.    Acceptance or Rejection of Plan. ....................................... 10
**ARTICLE IV Treatment of Classes of Claim** ............................................... 10
    4.1.    **Class 1.** ........................................................................... 10
    4.2.    **Class 2.** ........................................................................... 11
    4.3.    **Class 3.** ........................................................................... 12
    4.4.    **Class 4.** ........................................................................... 13
    4.5.    **Class 5.** ........................................................................... 13
    4.6.    **Class 6.** ........................................................................... 14
    4.7.    **Class 7.** ........................................................................... 14
**ARTICLE V Treatment of Unclassified Claims** ........................................... 14
    5.1.    Administrative Claims. ..................................................... 14
**ARTICLE VI Provisions for Execution of the Plan** ....................................... 16
    6.1.    Possession of Assets ....................................................... 16
    6.2.    Execution of Documents ................................................... 17
    6.3.    Alterations, Amendments, or Modifications............................ 17
    6.4.    Disbursing Agent ............................................................. 17
    6.5.    Final Decree ................................................................... 17
    6.6.    Retention and Enforcement of Claims ................................. 17
    6.7.    Means for Implementation of the Plan. ................................ 17
    6.8.    Actions Taken to Decrease Expenses and Increase Income. ........ 17
**ARTICLE VII Additional Provisions Applicable to All Classes** ................... 18
**ARTICLE VIII Provisions Governing Distributions and General Provisions**........... 18
    8.1    Distributions.................................................................... 18
    8.2    Notices .......................................................................... 19
    8.3    Default........................................................................... 19
**ARTICLE IX Effects of Confirmation** ......................................................... 20
    9.1    **Exculpation.** ..................................................................... 20
    9.2    Failure to Pay Taxes. ........................................................ 20
**ARTICLE X Cramdown Provisions and Confirmation Request** ................... 20
**ARTICLE XI Modification of the Plan** ........................................................ 20
    11.1    Pre-Confirmation Modification ........................................... 20
    11.2    Post-Consummation Modification....................................... 21

11.3      Non-Material Modifications ................................................................. 21
**ARTICLE XII Causes of Action** ................................................................... 21
13.1      Litigation................................................................................................ 21
13.2      Powers ................................................................................................... 21
**ARTICLE XIII Miscellaneous**........................................................................ 21
14.1      Choice of Law ....................................................................................... 21
14.2      Payment of Statutory Fees ................................................................... 21
14.3      Discharge of Debtor and Effect of Confirmation Order .................... 21
14.4      Severability ........................................................................................... 22
14.5      Successors and Assigns ....................................................................... 22
14.6      Binding Effect........................................................................................ 22
14.8      Withholding and Reporting Requirements ........................................... 22
**ARTICLE XIV Provisions for Resolving and Treating Claims** ..................... 22
15.1      Objections.............................................................................................. 22
15.2      Prosecution of Objections..................................................................... 22
15.3      No Distributions Pending Allowance .................................................. 22
15.4      Distributions After Allowance.............................................................. 23

## ARTICLE I
### Introduction

On January 29, 2018, Total Comm Systems, Inc. (the "Debtor"), the Debtor and Debtor-in-Possession, commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

The Debtor operates primarily in Pennsylvania providing its clients in the communications industry with engineering, construction, installation, and maintenance services. The Debtor currently employs approximately 25 employees.

This document is the Fourth Amended Chapter 11 plan (the "Plan") proposed by the Debtor. Sent to you in the same envelope as this document is the Disclosure Statement, which has been approved by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court"), and which is provided to help you understand the Plan.

This is a Plan of reorganization. In other words, the Debtor seeks to accomplish payments under the Plan by restructuring existing debt. The Effective Date of the proposed Plan is sixty (60) days after the Confirmation Order is entered by the Court.

## ARTICLE II
### Definitions

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

2.1.    "ADMINISTRATIVE CLAIM" means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the chapter 11 case allowable under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.2.    "ADMINISTRATIVE CLAIMANT" means the holder of an Administrative Claim.

2.3.    "AFFILIATE" has the meaning provided in Section 101(2) of the Bankruptcy Code.

2.4.    "AFFILIATE CLAIMS" means any Claims held by an Affiliate.

2.5.    "ALLOWANCE DATE" means the date a Claim becomes an Allowed Claim.

2.6.    "ALLOWED" The use of the term "Allowed" with reference to a Claim (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the Debtor's bankruptcy

schedules (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a proof of claim properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

2.7.    "ALLOWED CLAIM" means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

2.8.    "ASSETS" means all of the Debtor's property, real and personal, tangible and intangible, including without limitation accounts receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, Causes of Action, Claims and rights of any kind, wherever situated, together with the proceeds thereof.

2.9.    "BANKRUPTCY CODE" or "CODE" means Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

2.10.    "BANKRUPTCY COURT" or "COURT" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

2.11.    "BANKRUPTCY RULES" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and promulgated by the Supreme Court of the United States, as well as applicable Local Rules of Bankruptcy Procedure in the Eastern District of Pennsylvania.

2.12.    "BAR DATE" means the last date fixed by order of the Court for the filing of proofs of claim.

2.13.    "BUSINESS DAY" means any day except a Saturday, Sunday, or other day on which commercial banks located in the Commonwealth of Pennsylvania are authorized by law to close.

2.14.    "CASE" means the reorganization case of the Debtor under chapter 11 of the Bankruptcy Code presently captioned: *In re: Total Comm Systems, Inc.*, Bankruptcy No. 18-10525 (ELF).

2.15.    "CAUSES OF ACTION" means all Claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law,

5

including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

2.16.    "CLAIM" means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

2.17.    "CLAIMANT" means a person or entity holding a Claim (including, his, her or its successors, assigns, heirs, executors, or personal representatives) under the Plan.

2.18.    "CLASS" means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

2.19.    "CONFIRMATION DATE" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Bankruptcy Code becomes a Final Order.

2.20.    "CONFIRMATION HEARING" means the hearing at which the Court considers confirmation of this Plan.

2.21.    "CONFIRMATION ORDER" means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.22.    "CONTESTED CLAIM" means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a Claim which is scheduled as contingent or disputed.

2.23.    "CREDITOR" means the holder of a Claim against the Debtor.

2.24.    "CRITICAL VENDOR" means a vendor offering materials or services upon which the Debtor's business depends and for which the Debtor's business would be critically, negatively impacted if the Debtor had to replace the vendor.

2.25.    "DEBTOR" means Total Comm Systems, Inc. as its interest may appear.

2.26.    "DEFICIENCY CLAIM" means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

2.27.   "DISBURSING AGENT" has the meaning given to such term in Section 6.4 hereof.

2.28.   "DISPUTED CLAIM" means any Claim which is scheduled as disputed, contingent, or unliquidated, or which is objected to in whole or in part before the Effective Date.

2.29.   "DISTRIBUTION" means any payment by the Debtor to a Claimant on account of a Claim.

2.30.   "EFFECTIVE DATE" means sixty (60) days after the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

2.31.   "FEE CLAIM" means a Claim under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Case.

2.32.   "FINAL ORDER" means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

2.33.   "IMPAIRED CLASS" means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.34.   "INSIDER" means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

2.35.   "LIEN" means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

2.36.   "PERSON" means a person within the meaning of Section 101(41) of the Bankruptcy Code.

2.37.   "PETITION DATE" means January 29, 2018, the date upon which the Debtor filed its Petition.

2.38.   "PETITION" means the voluntary petition for reorganization filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code.

2.39.   "PLAN" means this Plan of Reorganization, as it may be further amended, modified, or supplemented from time to time, and any exhibits and schedules thereto.

2.40.    "PLAN PROPONENT" means the Debtor.

2.41.    "PRIORITY NON-TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under Sections 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

2.42.    "PRIORITY TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

2.43.    "PRO RATA" means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

2.44.    "PROPERTY" means all property, real and personal, owned by the Debtor.

2.45.    "REORGANIZED DEBTOR" means the Debtor in Possession as consolidated, reorganized and functioning under the Plan after the Effective Date.

2.46.    "REJECTION CLAIM" means any Claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtor by Final Order.

2.47.    "SCHEDULES" means the schedules of assets and liabilities filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as amended from time to time.

2.48.    "SECURED CLAIM" shall mean a Claim that is (a) secured by a valid, perfected, and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured Claim in such assets.

2.49.    "TAX CLAIM" means any Claims asserted against the Debtor for unpaid taxes, and additional amounts related to any such unpaid taxes, owed to a national, state, county, school district, city, or municipal taxing authority.

2.50.    "UNIMPAIRED CLASS" means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.51.    "UNSECURED CLAIM" means any Claim, whether or not disputed, liquidated or contingent, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim, or Secured Claim.

# ARTICLE III
## Classification of Claims

As required by the Bankruptcy Code, the Plan classifies Claims in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims is Impaired or Unimpaired. The Plan provides the treatment each Class will receive under the Plan. A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

3.1.    **Class 1.**        **Secured Claim of J D Factors, LLC ("J D Factors").** Class 1 consists of the Secured Claim of J D Factors. The Class 1 Claim is Impaired under the Plan.

3.2.    **Class 2.**        **Secured IRS Claim.** Class 2 consists of a Secured Tax Claim held by the Internal Revenue Service in the amount of approximately $61,749.89. Class 2 is Unimpaired under the Plan.

3.3.    **Class 3.**        **Secured Tax Claims.** Class 3 consists of holders of Secured Tax Claims, which are estimated to be $224,534.19. Class 3 is comprised of the State of New Jersey Department of Labor, the State of New Jersey Division of Taxation, the Commonwealth of Pennsylvania, and the Virginia Department of Taxation. Class 3 is Unimpaired under the Plan.

3.4.    **Class 4.**        **Other Secured Claims.** Class 4 consists of holders of Claims which may be Secured Claims, which are estimated to be $327,475.71. Class 4 is Unimpaired under the Plan.

3.5.    **Class 5.**        **Critical Vendor Claims.** Class 5 consists of Critical Vendor Claims, which are estimated to be $231,256.37. Class 5 is Impaired under the Plan.

3.6.    **Class 6.**        **General Unsecured Claims.** Class 6 consists of the Allowed General Unsecured Claims. Class 6 Claims include all penalties of any priority Claims not otherwise classified herein, and any unsecured portions of Class 1, 3, and 4 Claims. The Class 6 Claims are Impaired under the Plan.

3.7.    **Class 7.**        **Equity Holders.** Class 7 includes all equity, ownership, or stock interests in the Debtor including all warrants, options, or rights to acquire shares whether issued or not and whether contained in a single document or part of a loan document or debt instrument. Class 7 Claims are Impaired under the Plan.

3.8.    Administrative and Unsecured Priority Tax Claims. As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Unsecured Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Plan. As of the time of filing of the Plan, Administrative Claims, including professional fees, are estimated to be $200,000.00. Unsecured Priority Tax Claims are estimated

to be $1,065,309.85. The treatment and payment of these Claims is addressed in Section 5(1)(f) of this Plan, *infra*.

    3.9.   <u>Priority Non-Tax Claims.</u> Priority Non-Tax Claims also are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Plan. As of the time of filing of this Plan, Priority Non-Tax Claims totaled approximately $56,926.78; approximately $100,000.00 had been paid with Court approval on account of pre-petition wages and associated claims for employees.

    3.10.   <u>Acceptance or Rejection of Plan.</u> Each Impaired Class of Creditors with Claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such Class that have accepted or rejected the Plan. If any Impaired Class of Creditors shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor will request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

### ARTICLE IV
### Treatment of Classes of Claim

    4.1.   **Class 1.**   **<u>Secured Claim of J D Factors</u>**. Class 1 is Impaired. The Class 1 Creditor holds a pre-petition Secured Claim against the Debtor based on a factoring agreement relating to the Debtor's accounts receivable.

    As of the Petition Date, the amount of the J D Factors' Secured Claim was $2,512,692.82; with Court approval, J D Factors also provided debtor-in-possession factoring of open accounts receivable and the use of the Debtor's cash collateral, up to a total post-petition amount of $100,000.00, which would attach with equal priority to the pre-petition Secured Claim ("DIP Factoring"). Collectively, the pre- and post-petition claims are the "J D Factors Secured Claim." The collateral for the J D Factors Secured Claim consists of the Debtor's accounts receivable. However, as of the Petition Date, the Debtor believes that the value of the property subject to the lien totals approximately $773,799.84.

    The J D Factors Secured Claim shall be treated as follows:

        a.   The J D Factors Secured Claim will be reduced via payments from third parties on invoices which were factored pre- and post-petition during the post-petition period, leaving approximately $2,400,000.00 remaining on the J D Factors Secured Claim;

        b.   Monthly payments in the amount of $49,750.00 will be made for the allowed amount of the J D Factors Secured Claim; this amount shall be offset against post-petition rebates, with any rebates above the monthly

payment amount to reduce the next scheduled monthly payment(s);

c.  Monthly payments will commence the first day of the first calendar month after the Effective Date and continuing for thirty-six (36) months with interest accruing at the rate of 3.5%;

d.  A balloon payment for the balance of the J D Factor Secured Claim, plus interest accruing at a rate of 3.5%, shall be due and payable on the first Business Day of the thirty-seventh (37th) calendar month after the Effective Date;

e.  The Class 1 Creditor will maintain any lien, encumbrance, and/or security interest in the Property or assets of the Debtor, whether the lien, encumbrance, and/or security interest was granted pre- or post-petition, and irrespective of whether it was granted on an initial or replacement lien basis, until the conclusion of this Plan;

f.  The Debtor contemplates continuing to finance its operations post confirmation by entering into a post confirmation factoring arrangement with the Class 1 Creditor on terms similar to the DIP Factoring arrangement and for which all of the Post-Confirmation Debtor's assets will be pledged as collateral. In addition, the Post-Confirmation factoring will provide that the J D Factor Secured Claim referenced above shall be cross defaulted, accelerated and due in full, in the event the Post-Confirmation factoring is in default, terminated, replaced or paid in full at any time prior to the thirty-seventh (37th) calendar month after the Effective Date; and

g.  Except for the amount described in Section 4(1)(a), *supra*, to the extent that any amount of the Class 1 Claim is deemed unsecured, it shall be paid as a General Unsecured Claim (*see* Class 6, *infra*). The Debtor estimates the unsecured portion of the J D Factors Claim at approximately $0.

As a result of the treatment of the Class 1 Creditor under the Debtor's Plan, J D Factors will receive less than the full amount of the J D Factors Secured Claim. The treatment and consideration of the Class 1 Claim pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of the Claim.

4.2.   **Class 2.**        **Secured IRS Tax Claim.** Class 2 is Unimpaired. The Class 2 Claimant is the Internal Revenue Service, which holds a secured claim of approximately $61,749.89; this Claim primes the Class 1 Creditor's Claim. The Class 2 Claim shall be treated as follows:

a.  Regular equal monthly payments will be made for the Allowed Class 2 Claim; and

11

b.  Monthly payments of the Allowed Class 2 Claim will commence the first day of the first calendar month after the Effective Date and continue monthly with interest accruing at the rate of 6% such that the Claim is paid within sixty (60) months of the Petition Date; and

c.  The Class 2 Creditor will maintain any lien, encumbrance, and/or security interest in the Property or assets of the Debtor until the conclusion of this Plan as they relate to the Secured Claims; and

d.  The Class 2 Claimant shall retain its Class 2 Claim until paid in full according to this Plan.

4.3.    **Class 3.**        **Secured Tax Claims.** Class 3 is Unimpaired. Class 3 Claimants are holders of Secured Tax Claims with secured positions in the Debtor's property. Class 3 consists of the State of New Jersey Division of Taxation, holding Secured Claims of approximately $8,946.74; the State of New Jersey Department of Labor, holding Secured Claims of approximately $7,435.98; the Commonwealth of Pennsylvania Department of Revenue, holding Secured Claims of approximately $25,500.94; and the Commonwealth of Pennsylvania Department of Labor and Industry, holding Secured Claims of approximately $182,650.53. Class 3 Claims total approximately $224.534.19 and shall be treated as follows:

a.  Following a final determination of the allowed amount of each Class 3 Secured Claim, regular equal monthly payments will be made for the Allowed Secured amount of the Class 3 Claims; and

b.  Monthly payments of the Allowed Class 3 Claims will commence the first day of the first calendar month after the Effective Date and continue monthly such that the Allowed Class 3 Claims are paid within sixty (60) months of the Petition Date;

c.  Interest on the Allowed Class 3 Claims will accruing at the rate of 4% unless otherwise specified herein. The interest on the following creditor's claims will accrue at the rate of: 15% for the State of New Jersey Division of Taxation; 8.25% for the State of New Jersey Division of Labor; 6% interest for the Pennsylvania Department of Labor; 6% interest for the Pennsylvania Department of Revenue; and 6% interest for the IRS.

d.  The Class 3 Creditors will maintain any lien, encumbrance, and/or security interest in the Property or assets of the Debtor until the conclusion of this Plan as they relate to the Secured Claims; and.

e.  Each Holder of a Class 3 Claim shall retain its claim until paid in full according to this Plan.

As a result of the treatment of the Class 3 Creditors under the Debtor's Plan, Class 3 Claimants will receive the full amount of their respective Allowed Secured Claims. All payments

to Class 3 Claimants will be made through the monthly Distributions described in the Plan. The treatment and consideration to be received by holders of Class 3 Allowed Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of their respective Claim.

4.4.    **Class 4.**        **Other Secured Claims**. Class 4 is Unimpaired. Class 4 Claimants are Creditors with Secured Claims that are not included in Classes 1, 2, or 3 and which are not for active leases or long term secured claims stemming from the purchase of a motor vehicle[1], which total approximately $327,475.71. The designation of this Class (and its members' ability to vote on the Plan) does not purport to establish or confirm the validity, priority, and/or extent of any lien, claim, or security interest alleged by a Class 4 Creditor.

Class 4 Claims shall be treated as follows:

a.    Monthly payments of the Allowed Secured Class 4 Claims will commence the first day of the first calendar month after the Effective Date and continuing for seventy-two (72) months with interest accruing at the rate of 3.5%; and

b.    The Class 4 Creditors will maintain any lien, encumbrance, and/or security interest in the Property or assets of the Debtor based on and to the extent and priority as in effect on the Petition Date until the conclusion of this Plan as they relate to the Secured Claims; and

c.    To the extent that any amount of a Class 4 Claim is unsecured, it shall be paid as a General Unsecured Claim (*see* Class 6, *infra*).

As a result of the treatment of the Class 4 Creditors under the Debtor's Plan, Class 4 Claimants will receive the full amount of their respective Allowed Secured Claims. All payments to Class 4 Claimants will be made through the monthly Distributions described in the Plan. The treatment and consideration to be received by holders of Class 4 Allowed Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of their respective Claim.

4.5.    **Class 5.**        **Critical Vendor Claims.** Class 5 is Impaired. Class 5 Claims total approximately $130,906.37. Class 5 is comprised of: (a) Tower Systems, Inc., (b) Tetra Tech, Inc.; (c) Xcel Energy, Inc.; (d) CommStructures, Inc.; (e) Downs Electric, Inc.; (f) Countryside Lawn and Landscape, Inc.; and (g) Sunbelt Rentals.

The total of Class 5 Claims is approximately $130,906.37. The Debtor will pay up to $256,906.37 to Class 5 Claims as a "convenience class" which may be paid in full within six months of the Effective Date so long as such claims are (a) $8,500.00 or less, or (b) the Class 5 Creditor chooses to reduce its Claim to a maximum of $8,500.00. The Class 5 Claims shall be treated as follows:

---

[1] The secured claims relating to active leases or the purchase of a motor vehicle are held by Ford Motor Credit, Citizens Bank, and Toyota Motor Credit Corp. They will be paid outside of the Plan in accordance with the underlying purchase financing or lease agreements entered into between the Debtor and the respective creditors.

a.  To the extent that Class 5 Claims total less than $8,501.00, the Debtor may (at the Debtor's sole discretion) pay such claims in full within six months of the Effective Date, but shall have no obligation to do so for any Class 5 Claimant; and

b.  Any Class 5 Claimant may voluntarily reduce its Claim to $8,500.00 in order to opt in to the payment contemplated in subparagraph (a), and (at the Debtor's sole discretion) receive payment in the full amount of up to $8,500.00 in full satisfaction and release of such Claim, within six months of the Effective Date; however, the Debtor shall have no obligation to do so for any Class 5 Claimant; and

c.  Any Class 5 Claimants receiving payments in excess of $8,500.00, or which the Debtor does not pay pursuant to subparagraphs (a) or (b) of this Section, shall be paid the full dollar amount of each Class 5 Allowed Claim, with equal monthly payments to commence the first day of the first calendar month after the Effective Date and continuing for seventy-two (72) months.

Unless paid pursuant to subparagraphs (a) or (b) of this section, all payments to Class 5 Claimants will be made through the monthly Distributions described in the Plan. The treatment and consideration to be received by holders of Class 5 Allowed Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of their respective Claim.

4.6.    **Class 6.**        **Unsecured Claims.** Class 6 is Impaired. Class 6 Claims total approximately $1,777,082.21, not including any amounts of Class 1 and/or 4 Claims which may be determined to be unsecured and which will also be included in Class 6 Claims. Those amounts have yet to be determined.

The Debtor shall pay $575,000.00 to satisfy Class 6 Claims, thus creating a distribution of approximately 35% per dollar amount of each Class 6 Claim (not including unsecured portions of other Classes' Claims). The Debtor shall make equal monthly payments on account of each Allowed Class 6 Claim over seventy-two (72) months. The treatment and consideration to be received by holders of Class 6 Allowed Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of their respective Claim.

4.7.    **Class 7.**        **Equity Holders**. Class 7 consists of original equity holders in the Debtor. Holders of Class 7 Claims shall not receive a distribution under the Plan, and shall maintain their equity interests.

### ARTICLE V
### Treatment of Unclassified Claims

5.1.    <u>Administrative Claims</u>. Section 1129(a)(9)(A) of the Code requires a plan to provide for payment of all administrative tax liabilities in full as of the effective date of a plan

without the need for such taxing authority to file an Administrative Claim. All Administrative Claims shall be treated as follows:

      a.      <u>Time for Filing Administrative Claims</u>. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within ninety (90) days after the Effective Date. Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

      b.      <u>Time for Filing Fee Claims</u>. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. To the extent permitted by law, any professional person's Fee Claim shall be permitted to include in its request for payment of a Fee Claim fees and expenses incurred for the preparation, filing and prosecution of such Fee Claim. No motion or application is required to fix fees payable to the clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

      c.      <u>Allowance of Administrative Claims</u>. An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1(a) of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Fee Applications shall be filed on or before the 60th day from the day the Confirmation Order is signed and entered upon the docket.

      d.      <u>Payment of Allowed Administrative Claim</u>. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date and so long as such modification of treatment made by the Debtor and any holder of an Allowed Administrative Claim does not impair any other Class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

      e.      <u>Professional Fees Incurred After the Effective Date</u>. Any professional fees incurred by the Reorganized Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the

Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

   f. <u>Priority Unsecured Tax Claims</u>. Priority Unsecured Tax Claims are certain unsecured income, employment, payroll, sales and other taxes, along with applicable interest, described by Bankruptcy Code sections 507(a)(8) and 511. In this case, these Claims are: (a) the Internal Revenue Service, holding an Unsecured Claim of approximately $712,552.96; (b) the Commonwealth of Pennsylvania, holding Unsecured Claims of approximately $113,107.47 (Unemployment) and $132,062.99 (Revenue); (c) the State of New Jersey Division of Taxation, holding Priority Tax Claims totaling approximately $35,397.52; (d) the City of Philadelphia, holding a Priority Tax Claim of approximately $5,764.86; (e) the Virginia Department of Taxation, holding a Priority Tax Claim of approximately $38,858.29; and (f) the State of New Jersey Department of Labor, holding a Priority Tax Claim of approximately $13.671.64. Each holder of a Priority Unsecured Tax Claim will be paid in full, in regular equal monthly installment payments of cash of a total value, as of the effective date of the Plan, equal to the Allowed amount of such Claim; over a period ending not later than five (5) years after the Petition Date; with interest accruing at the rate of 4% unless otherwise specified herein (the interest on the following creditors' claims will accrue at the rate of: 15% for the State of New Jersey Division of Taxation; 8.25% for the State of New Jersey Division of Labor; 6% interest for the Pennsylvania Department of Labor; 6% interest for the Pennsylvania Department of Revenue; and 6% interest for the IRS); and in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than cash payments made to a Class of Creditors under Bankruptcy Code Section 1122(b)), upon the later of the Effective Date of this Plan, or the date on which such Claim is Allowed by a Final Order. Each Holder of a Priority Unsecured Tax Claim shall retain its claim until paid in full according to this Plan. Monthly payments of the Priority Unsecured Tax Claims will commence the first day of the first calendar month after the Effective Date and continue monthly such that the Priority Tax Claims are paid within sixty (60) months of the Petition Date.

   g. <u>Priority Non-Tax Claims.</u> Priority Non-Tax Claims in this Case arise under Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) for the Debtor's employees' wages, salaries, and other associated benefits not paid within 180 days prior to the Petition Date. As of the filing of this Plan, the Debtor estimates that Priority Non-Tax Claims total approximately $56,926.78. Each holder of a Priority Non-Tax Claim will be paid in full, in regular equal installment payments of cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; over a period ending not later than sixty (72) months after the Effective Date.

### ARTICLE VI
### Provisions for Execution of the Plan

  6.1. <u>Possession of Assets</u>. All of the assets of the Debtor shall remain in the possession of the Debtor.

6.2.    Execution of Documents. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

6.3.    Alterations, Amendments, or Modifications. This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date, as provided in Section 1127 of the Bankruptcy Code.

6.4.    Disbursing Agent. The Debtor shall be the Disbursing Agent ("Disbursing Agent") herein. The Disbursing Agent shall have the sole and exclusive right to make the distributions required by the Plan. The Disbursing Agent may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with Section 345 of the Bankruptcy Code. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

6.5.    Final Decree. After final distributions are made, the Reorganized Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final Plan implementation reports and pay any fees to the Office of the United States Trustee.

6.6.    Retention and Enforcement of Claims. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all Claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

6.7.    Means for Implementation of the Plan. The Debtor will continue to operate its business providing engineering, construction, installation, and maintenance services to its clients in the communications industry. The Debtor will, based on the Debtor's projections, generate sufficient revenue to make the monthly Distributions contemplated under this Plan. The Debtor is confident that it will be able to maintain sufficient revenue to continue making the Distributions and to meet its ongoing operating expenses. Michael H. Pollitt, President and Shareholder, will continue to serve as the Debtor's president and will be responsible for managing the Debtor's operations.

6.8.    Actions Taken to Decrease Expenses and Increase Income. The Debtor will continue its operations while evaluating and potentially eliminating the provision of any services which do not clearly demonstrate the best possible use of the Debtor's resources. Currently, the Debtor's primary concern is stabilizing its income stream and continuing its operations. The Debtor's Plan will be funded through its continuing operations, so the Debtor will take advantage of any opportunity that will optimize its operations and generate a net profit while maintaining the Debtor's overall health

## ARTICLE VII
## Additional Provisions Applicable to All Classes

7.1.    The payments, distributions and other treatments provided in respect of each Allowed Claim in the Plan shall be in full settlement and complete satisfaction discharge and release of such Allowed Claim. As to any Secured and/or Priority Tax Claims of any taxing authorities, discharge of any tax debt under this Plan shall not be effective until paid in full.

7.2.    Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim which at such date or time are disputed, unliquidated, or contingent shall not be made until such Claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Plan.

## ARTICLE VIII
## Provisions Governing Distributions and General Provisions

8.1    Distributions. Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, pursuant to the relevant Plan provisions, or as soon as practicable thereafter or as may be otherwise ordered by the Court.

a.    Delivery of Distributions. Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. All Claims for undeliverable distributions must be made to the Disbursing Agent on or before the later of (i) the first anniversary of the Effective Date, or (ii) ninety (90) days after the respective distribution was made. After that date, all unclaimed property will become property of the Reorganized Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

b.    Means of Cash Payment. Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank, or by wire transfer from a domestic bank. All cash distributions will be made by the Disbursing Agent.

c.    Time Bar to Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days of the date of their issuance. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued. Any Claim relating to a voided check must be made on or before the later of the (i) first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided. After the date, all Claims will be discharged and forever barred and the cash, including interest earned, shall be revested in the Debtor.

      d.      <u>Setoffs</u>. The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such Claim the Debtor may have against such Claimant. The Commonwealth of Pennsylvania, Department of Taxation reserves its rights to preserve deposits and reserves its setoff rights.

      e.      <u>De Minimis Distributions</u>. No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any Creditor unless a request is made in writing to Debtor to make such a payment.

      f.      <u>Saturday, Sunday or Legal Holiday</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

      8.2      <u>Notices</u>. Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return receipt requested, and if sent to:

      a.      If to the Debtor, addressed to:

          Total Comm Systems, Inc.
          2480 Durham Road, Unit A
          Bristol, PA 19007

With copies to:

      b.      Counsel:

          Thomas D. Bielli, Esquire
          BIELLI & KLAUDER, LLC
          1500 Walnut Street, Suite 900
          Philadelphia, PA 19102

      8.3      <u>Default</u>. No default shall be declared under this Plan unless and until any payment due under this Plan has not have been made within thirty (30) days after written notice to the Reorganized Debtor and counsel for the Debtor. As to defaults regarding Tax Claims, if the debtor defaults, the taxing authority will give notice to the Debtor of the default. Upon notice of default, the debtor will have thirty (30) days to cure the default. If the Debtor fails to cure the default, the taxing authority may immediately exercise its administrative rights and/or state law rights to fully collect the remaining debt.

8.4    Retained Jurisdiction and Enforcement Remedies for Tax Claimants: Notwithstanding anything in this plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to tax claims except for (i) resolving the amount any tax claims arising prior to confirmation, and (ii) enforcing the discharge provisions of the confirmed plan. A failure by the reorganized debtor to make a payment to holders of tax claims pursuant to the terms of the plan shall be an event of default. If the reorganized debtor fails to cure an event of default as to Plan payments on the tax claims within thirty days after receipt of written notice of default from a tax claimant, then the tax claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies such tax claimant may have under applicable nonbankruptcy law; and/or (c) seek such relief as may be appropriate in this Court.

## ARTICLE IX
## Effects of Confirmation

9.1    **Exculpation. Following the Effective Date, none of the professional persons employed by the Debtor, its employees, or its agents, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this Article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

9.2    Failure to Pay Taxes. Notwithstanding any other language in this Section, a taxing authority's pursuit of the Debtor for Debtor's failure to pay tax liabilities arising post-petition shall not violate any provisions of the Plan.

## ARTICLE X
## Cramdown Provisions and Confirmation Request

10.1    If sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

## ARTICLE XI
## Modification of the Plan

11.1    Pre-Confirmation Modification. At any time before the Confirmation Date, the Plan may be modified by the Debtor upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.2    <u>Post-Consummation Modification</u>. At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Debtor upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under these sections, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

11.3    <u>Non-Material Modifications</u>. At any time, the Debtor may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

**ARTICLE XII**
**<u>Causes of Action</u>**

13.1    <u>Litigation</u>. Except as otherwise provided in the section of this Plan entitled "Powers," the Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Bankruptcy Rules with respect to any Cause of Action.

13.2    <u>Powers</u>. The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

**ARTICLE XIII**
**<u>Miscellaneous</u>**

14.1    <u>Choice of Law</u>. Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

14.2    <u>Payment of Statutory Fees</u>. All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

14.3    <u>Discharge of Debtor and Effect of Confirmation Order</u>. Except as provided in Section 1141(d) of the Bankruptcy Code and as otherwise provided in the Plan, the provisions of the Plan and the Confirmation Order shall bind the Reorganized Debtor and all holders of Claims and will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of

the Bankruptcy Code and whether or not such holder is impaired under the Plan and whether or not such holder has accepted the Plan, and shall terminate all rights, Claims of such holder, except as provided in the Plan.

Notwithstanding the forgoing, the discharge granted by Bankruptcy Code Section 1141(d) is modified as to the Secured and/or Priority Tax Claim(s) provided for in this Plan, and the discharge of any Secured and/or Priority Tax Claim(s) under this Plan shall not be effective until all Secured and/or Priority Tax Claim(s) provided for in the Plan have been paid in full.

14.4    <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

14.5    <u>Successors and Assigns</u>. The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

14.6    <u>Binding Effect</u>. The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, and their respective successors and assigns.

14.7    <u>Outstanding Tax Returns</u>. The Debtor will file any outstanding tax returns that were due on or before the Confirmation Date within thirty (30) days of the Confirmation Date.

14.8    <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

## ARTICLE XIV
## <u>Provisions for Resolving and Treating Claims</u>

15.1    <u>Objections</u>. Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any Claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated. The Debtor shall file all such objections on or before the 60th day from the Effective Date of the Court's Confirmation Order.

15.2    <u>Prosecution of Objections</u>. After the date of entry of the Confirmation Order, only the Debtor will have authority to file objections, litigate to judgment, or settle or withdraw objections to Contested Claims.

15.3    <u>No Distributions Pending Allowance</u>. No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim. If only a portion of a Claim is disputed (and in the absence of a basis for set off

or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the Claim, pending resolution of the portion which is disputed.

15.4   <u>Distributions After Allowance</u>. Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

Respectfully submitted,

**TOTAL COMM SYSTEMS, INC.**

Date: February 15, 2019

*/s/ Michael H. Pollitt*
Michael H. Pollitt
President

**BIELLI & KLAUDER, LLC**

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire
David M. Klauder, Esquire
Cory P. Stephenson, Esquire
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Phone: (215) 642-8271
Fax: (215) 754-4177
tbielli@bk-legal.com
dklauder@bk-legal.com
cstephenson@bk-legal.com

*Counsel to the Debtor*